UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS J. OLSEN, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN LOUBOUTIN, L.L.C.,<br><br>Defendant. | ECF CASE<br><br>No.: _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.    Plaintiff Thomas J. Olsen, who is legally blind, brings this civil rights action against Defendant Christian Louboutin, L.L.C. ("Christian Louboutin") for its failure to design, construct, maintain, and operate its website, www.us.christianlouboutin.com (the "Website"), to be fully accessible to and independently usable by Plaintiff Olsen and other blind or visually-impaired people. Christian Louboutin denies full and equal access to its Website.

2.    Plaintiff Olsen, individually and on behalf of others similarly situated, asserts claims under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") against Christian Louboutin.

3.    Plaintiff Olsen seeks a permanent injunction to cause Christian Louboutin to change its corporate policies, practices, and procedures so that its Website will become and remain accessible to blind and visually-impaired consumers.

## THE PARTIES

4.      Plaintiff Olsen is, at all relevant times, a resident of Brooklyn, New York, Kings County. As a blind, visually-impaired handicapped person, he is a member of a protected class of individuals under Title III of the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the NYSHRL and NYCHRL.

5.      Christian Louboutin is at all relevant times a domestic limited liability company that is organized under New York law, and authorized to do business in the State of New York.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff Olsen's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Olsen's NYSHRL, N.Y. Exec. Law Article 15, and NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, claims.

8.      Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(c)(2), 1391(d) because this District has jurisdiction over Christian Louboutin and it would be considered a resident of this District if it was a separate state: Christian Louboutin's corporate headquarters is located in this District at 306 West 38th Street, New York, New York; it owns and operated numerous stores in this District; it employs individuals in this district; it rents property in this District; and it has purposely and intentionally availed itself of the privileges of doing business in this District.

9.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## NATURE OF ACTION

10.     Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech ("JAWS") is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

11.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

12.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure its websites are accessible.

13.     For a website to be equally accessible to a blind or visually impaired person, under these guidelines, it should have following:

a.      Alternative text ("alt-text") or text equivalent for every non-text element. Alt-text is an invisible code embedded beneath a graphical image on a website.

Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics, depriving that person from knowing what is on the website.

   b.  Videos have audio description.

   c.  Title frames with text are provided. Absent these titles, navigating a website is particularly difficult.

   d.  Webpage headings are properly labeled with the topic or purpose of the webpage, versus being blank. Screen readers read out page headings, allowing users to quickly skip to a section. Navigation is, however, very difficult without those headings.

   e.  Equivalent text is provided when using scripts.

   f.  Forms may be completed with the same information and functionality as for sighted persons. Absent forms being properly labeled, it is difficult for a visually impaired or blind individual to complete the forms, as they do not know what the fields, how to input data, or what options to select (e.g., selecting a date or a size). A compliant website will, instead, provide labels or instructions when content requires user input. This includes captcha prompts, requiring the user to verity that he or she is not a robot.

   g.  Information about the meaning and structure of content is conveyed by more than the visual presentation of content.

h.      Web pages do not share the same ID or title. When two or more elements on a web page share the same ID or title, it cause problems in screen readers which use IDs for labeling controls and table headings.

i.      Linked images must contain alt-text explaining the image. Absent that alt-text, a screen reader has no content to present the user as to what the image is.

j.      The purpose of each link is easily determined from how the link is labeled. Absent properly labeling each link or when no description exists, it confuses keyboard and screen-reader users as they do not know the purpose of the links. This includes captcha prompts.

k.      No redundant links where adjacent links go to the same URL address. When redundant links exist, it causes additional navigation and repetition for keyboard and screen-reader users.

l.      Portable Document Formats (PDFs) are accessible. When they are inaccessible, the visually impaired or blind individual cannot learn what information is on them.

m.      One or more keyboard operable user interface has a mode of operation where the keyboard focus indicator is discernible.

n.      Changing the setting of a user interface component does not automatically cause a change of content where the user has not been advised before using the component.

o.      The name and role of all user interface elements can be programmatically determined; items that can be set by the user can be programmatically

set; and/or notification of changes to these items are available to user agents, including assistive technology.

STATEMENT OF FACTS

Christian Louboutin, Its Website And Its Website's Barriers

14. Christian Louboutin owns and operates stores throughout the United States, including locations at 965-967 Madison Avenue, New York, New York, 59 Horatio Street, New York, New York and 808 Washington Street, New York, New York, New York. It sells, at these stores, shorts, shoes, dresses, rompers, accessories and similar items.

15. Christian Louboutin's Website is heavily integrated with its stores, serving as a gateway to them. Through the Website, Christian Louboutin's customers are, inter alia, able to: learn information about the stores' locations and hours of operation; the items for sale in the stores and online, including available sizes, the materials used, details about the items, and care instructions; purchase items online for delivery; learn about the return policy; contact the company and interact with it via social media.

16. It is, upon information and belief, Christian Louboutin's policy and practice to deny Plaintiff Olsen and other blind or visually-impaired users access to its Website, thereby denying the facilities and services that are offered and integrated with its stores. Due to its failure and refusal to remove access barriers to its Website, Plaintiff Olsen and visually-impaired persons have been and are still being denied equal access to Christian Louboutin's stores and the numerous facilities, goods, services, and benefits offered to the public through its Website.

17. Plaintiff Olsen cannot use a computer without the assistance of screen-reading software. He is, however, a proficient screen-reader user and uses it to access the Internet. He has visited the Website on separate occasions using screen-reading software.

18. During his visits to the Website, the last occurring on or about July 8, 2018, Plaintiff Olsen encountered multiple access barriers that denied him the full enjoyment of the facilities, goods, and services of the Website, as well as to the facilities, goods, and services of Christian Louboutin's stores. Because of these barriers he was unable to, substantially equal to sighted individuals:

a. Know what is on the Website. This website is virtually impossible to navigate using a screen reader. Several images are undetected by the screen readers. Those that are detected lack alt-text describing them. The home page also included several unlabeled links, including the shopping cart, wishlist and search field, as well as the social media links. Plaintiff Olsen was unable to access a great deal of content using his screen reader. He was unable to access men's shoes, for example, because when he selected that link the content did not change. He could not access the return policy or create a return using the links on the website. Plaintiff Olsen was also unable to access the sizing guide and therefore could not learn about sizing.

b. Navigate the Website. Plaintiff Olsen found this website impossible to navigate using a screen reader. Upon entering the site, the screen reader constantly states that a page is loading even after the content has loaded. Although several headings are detected by the screen reader, they do not function properly. When navigating the headings with the screen reader, they all read as one continuous string of text. When selected, the content does not change until Plaintiff Olsen selects a link

labeled "menu." Even after selecting "menu" and then navigating through the links, he is not able to access the subheadings. When selecting a heading, either the content does not change or he is taken to a new page where he must search for a drop down menu or other relevant content. For example, when he selects Men's Shoes from the home page, he is not taken to a new page and the content does not change. However, when he selects Small Leather Goods, he is taken to a page named "Men's Designer Wallets," but the content of the page is the same as the Men's Home page.

      c.      Purchase items online. When navigating an item page, color options are not tagged and Plaintiff Olsen was unable to select a size, therefore he could not complete a purchase. In addition, the shopping cart link is unlabeled.

      d.      Process a return. Plaintiff Olsen was unable to access the store's return policy or process a return online.

19.      Plaintiff Olsen was denied full and equal access to the facilities and services Christian Louboutin offers to the public on its Website because he encountered multiple accessibility barriers that visually-impaired people often encounter with non-compliant websites:

      a.      Lack of alt-text for images.

      b.      Some pages have the same title, so the title cannot be used to distinguish pages.

      c.      Fieldset elements do not have legend elements.

      d.      Webpages have duplicate IDs, which cause problems in screen readers.

      e.      Form field labels are not unique on a page.

f. Several links on a page share the same link text but go to a different destination. For example, this text "Store Locator Store Locator  Clothing Jewelry   Brands We Love" is used to describe links to new clothing, jewelry, and pants webpages.

g. Links use the general text of "click here" without explaining the link's purpose. The Website includes this for example in describing the links to customer service and to purchase a gift card.

h. Webpages have markup errors.

Christian Louboutin Must Remove Barriers to Its Website

20. Due to the inaccessibility of its Website, blind and visually-impaired customers such as Plaintiff Olsen, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Christian Louboutin offers to the public on its Website. The Website's access barriers that Plaintiff Olsen encountered have caused a denial of his full and equal access in the past, and now deter him on a regular basis from accessing the Website. These access barriers have likewise deterred him from visiting Christian Louboutin's stores and enjoying them equal to sighted individuals.

21. If the Website was equally accessible to all, Plaintiff Olsen could independently navigate it, view goods and service items, locate Christian Louboutin's stores and learn their hours of operation, learn about the items for sale and complete a desired transaction as sighted individuals do.

22. Through his attempts to use the Website, Plaintiff Olsen has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

23.     Because simple compliance with the WCAG 2.0 Guidelines would provide Plaintiff Olsen and other visually-impaired consumers with equal access to the Website, Plaintiff Olsen alleges that Christian Louboutin has engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

a.      Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff Olsen;

b.      Failing to construct and maintain a website that is sufficiently intuitive to be equally accessible to visually-impaired individuals, including Plaintiff Olsen; and,

c.      Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff Olsen, as a member of a protected class.

24.     Christian Louboutin therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

25.     Title III of the ADA expressly contemplates the injunctive relief that Plaintiff Olsen seeks under 42 U.S.C. § 12188(a)(2).

26.     Because its Website has never been equally accessible, and because Christian Louboutin lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff Olsen seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Christian Louboutin to retain a qualified

consultant acceptable to Plaintiff Olsen to assist Christian Louboutin to comply with WCAG 2.0 guidelines for its Website:

      a.      Remediating the Website to be WCAG 2.0 AA compliant;

      b.      Training Christian Louboutin employees and agents who develop the Website on accessibility compliance under the WCAG 2.0 guidelines;

      c.      Regularly checking the accessibility of the Website under the WCAG 2.0 guidelines;

      d.      Regularly testing user accessibility by blind or vision-impaired persons to ensure that Christian Louboutin's Website complies under the WCAG 2.0 guidelines; and,

      e.      Developing an accessibility policy that is clearly disclosed on Christian Louboutin's Website, with contact information for users to report accessibility-related problems.

27.      Although Christian Louboutin may currently have centralized policies on maintaining and operating its Website, Christian Louboutin lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

28.      Without injunctive relief, Plaintiff Olsen and other visually impaired consumers will continue to be unable to independently use the Website, violating its rights.

29.      Christian Louboutin has, upon information and belief, invested substantial sums in developing and maintaining its Website and has generated significant revenue

from the Website. These amounts are far greater than the associated cost of making its Website equally accessible to visually impaired customers.

30. Christian Louboutin has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

## CLASS ACTION ALLEGATIONS

31. Plaintiff Olsen seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Christian Louboutin's Website and as a result have been denied access to the equal enjoyment of goods and services offered in Christian Louboutin's stores, during the relevant statutory period ("Class Members").

32. Plaintiff Olsen seeks to certify a State of New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Christian Louboutin's stores, during the relevant statutory period ("New York Subclass Members").

33. Plaintiff Olsen seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Christian Louboutin's stores, during the relevant statutory period ("New York City Subclass Members").

34. Common questions of law and fact exist amongst the Class Members, New York Subclass Members and New York City Subclass Members:

a. Whether Christian Louboutin's stores are places of "public accommodation";

b. Whether Christian Louboutin's Website is a "public accommodation" or a service or good "of a place of public accommodation" under Title III of the ADA;

c. Whether Christian Louboutin's Website is a "place or provider of public accommodation" or an "accommodation, advantage, facility or privilege" under the NYSHRL or NYCHRL;

d. Whether Christian Louboutin's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating Title III of the ADA; and

e. Whether Christian Louboutin's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

35. Plaintiff Olsen's claims are typical of the Class Members, New York Subclass Members and New York City Subclass Members: they are all severely visually impaired or otherwise blind, and claim that Christian Louboutin has violated Title III of the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on its Website so it can be independently accessible to the visually impaired individuals.

36. Plaintiff Olsen will fairly and adequately represent and protect the Class and Subclasses' interests because he has retained and is represented by counsel competent and experienced in complex class action litigation, and because he has no interests antagonistic to the Class or Subclasses. Class certification of the claims is

appropriate under Fed. R. Civ. P. 23(b)(2) because Christian Louboutin has acted or refused to act on grounds generally applicable to the Class and Subclasses, making appropriate both declaratory and injunctive relief with respect to Plaintiff, the Class and Subclasses.

37.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclass Members predominate over questions affecting only individuals, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

38.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

<u>FIRST CAUSE OF ACTION</u>
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

39.     Plaintiff Olsen, individually and on behalf of the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

40.     Title III of the ADA prohibits "discriminat[ion] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

41.     Christian Louboutin's stores are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Its Website is a service, privilege, or advantage of Christian Louboutin's stores. The Website is a service that is integrated with these locations.

42.     Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

43.     Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

44.     These acts violate Title III of the ADA, and the regulations promulgated thereunder. Plaintiff Olsen, who is a member of a protected class of persons under Title III of the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, he has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons, violating the ADA. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

45.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Olsen requests the relief as set forth below.

<u>SECOND CAUSE OF ACTION</u>
VIOLATIONS OF THE NYSHRL

46.     Plaintiff Olsen, individually and on behalf of the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

47.     Christian Louboutin's State of New York stores constitute sales establishments and public accommodations within the definition of N.Y. Exec. Law § 292(9). Christian Louboutin's Website is a service, privilege or advantage of Christian Louboutin. Christian Louboutin's Website is a service that is by and integrated with these stores.

48.     Christian Louboutin is subject to NYSHRL because it owns and operates its stores and the Website. Christian Louboutin is a "person" within the meaning of N.Y. Exec. Law § 292(1).

49.     Christian Louboutin is violating the NYSHRL in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with its stores to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Christian Louboutin makes available to the non-disabled public. N.Y. Exec. Law §§ 296(2)(a), 296(2)(c)(i), 296(2)(c)(ii).

50.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of its business nor result in an undue burden to them.

51.     Christian Louboutin's actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Christian Louboutin has:

a.      Constructed and maintained a website that is inaccessible to Class Members with knowledge of the discrimination; and/or

b.      Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.      Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

52.     Christian Louboutin discriminates, and will continue in the future to discriminate against Plaintiff Olsen and New York Subclass Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Christian Louboutin's Website and its stores under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Christian Louboutin from continuing to engage in these unlawful practices, Plaintiff and the New York Subclass Members will continue to suffer irreparable harm.

53.     As Christian Louboutin's actions violate the NYSHRL, Plaintiff Olsen seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties and fines for each offense, and reasonable attorneys' fees and expenses. N.Y. Exec. Law § 297.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL

54.     Plaintiff Olsen, individually and on behalf the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55.     Christian Louboutin's New York City locations are sales establishments and public accommodations within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-102(9), and its Website is a service that is integrated with its establishments.

56.     Christian Louboutin is subject to NYCHRL because it owns and operates its stores in the City of New York and its Website, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

57.     Christian Louboutin is violating the NYCHRL in refusing to update or remove access barriers to Website, causing its Website and the services integrated with its stores to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Christian Louboutin makes available to the non-disabled public. N.Y.C. Admin. Code §§ 8-107(4)(a); 8-107(15)(a).

58.     Christian Louboutin's actions constitute willful intentional discrimination against the Subclass because of a disability, violating the NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a) and § 8-107(15)(a,) in that it has:

          a.     Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

          b.     Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.      Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

59.      As such, Christian Louboutin discriminates, and will continue in the future to discriminate against Plaintiff Olsen and the New York City Subclass Members because of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website and its establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Christian Louboutin from continuing to engage in these unlawful practices, Plaintiff and the New York City Subclass will continue to suffer irreparable harm.

60.      As Christian Louboutin's actions violate the NYCHRL, Plaintiff Olsen seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties and fines for each offense, and reasonable attorneys' fees and expenses. N.Y.C. Admin. Code §§ 8-120, 8-126.

<u>FOURTH CAUSE OF ACTION</u>
DECLARATORY RELIEF

61.      Plaintiff Olsen, individually and on behalf the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

62.      An actual controversy has arisen and now exists between the parties in that Plaintiff Olsen contends, and is informed and believes that Christian Louboutin denies, that its Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of its Website and by extension its stores, which Christian Louboutin owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42

U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

63.     A judicial declaration is necessary and appropriate now in order that each of the parties may know its respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Olsen respectfully requests this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Christian Louboutin from violating Title III of the ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York;

b.     A preliminary and permanent injunction requiring Christian Louboutin to take all the steps necessary to make its Website into full compliance with the requirements set forth in Title III of the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Christian Louboutin owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York

d.     An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory damages, punitive damages and fines;

f. Pre- and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Olsen demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
      August 8, 2018

LIPSKY LOWE LLP


<u>s/ Douglas B. Lipsky</u>
Douglas B. Lipsky
Christopher H. Lowe
630 Third Avenue, Fifth Floor
New York, New York 10017-6705
212.392.4772
doug@lipskylowe.com
chris@lipskylowe.com